UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:
NICOLAS A. JIMENEZ
XXX-XX-7509
      Debtor(s)
_____/

CASE NO.: 13-30331-AJC
CHAPTER 13

## MOTION TO VALUE AND DETERMINE SECURED STATUS OF LIEN ON REAL PROPERTY

**IMPORTANT NOTICE TO CREDITORS:
THIS IS A MOTION TO VALUE YOUR COLLATERAL**

This Motion seeks to value collateral described below securing the claim of the creditor listed below.

**IF YOU DISPUTE THE VALUE ALLEGED OR TREATMENT OF YOUR CLAIM PROPOSED IN THIS MOTION, YOU MUST FILE A WRITTEN OBJECTION NO LATER THAN TWO BUSINESS DAYS PRIOR TO THE SCHEDULED HEARING [SEE LOCAL RULE 3015-3(A)(2)]**

If you have not filed a proof of claim, you have until the later of the claims bar date or 21 days from the date this Motion was served upon you to file a proof of claim or you will be deemed to have waived the right to payment of any unsecured claim to which you might otherwise be entitled. [See Local Rule 3015-3(A)(4)]

1. Pursuant to 11 U.S.C. §506, Bankruptcy Rule 3012, and Local Rule 3015-3, the Debtors seek to value real property securing the claim of <u>Indymac/OneWest Bank, FSB</u> (the "Lender"). Lender holds a mortgage recorded on <u>01/02/2007</u> at OR Book <u>25243</u> Pages <u>3622-3625</u> in the official records of Miami-Dade County, Florida.

2. The real property is located at <u>9055 NW 168th Terrace, Hialeah, FL 33018</u> and is more particularly described as follows:

    LOT 24, IN BLOCK 2, OF GENESIS OAK GARDENS, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 155, AT PAGE 56 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

LF-77 (rev. 04/29/11)

3. At the time of the filing of this case, the value of the real property is $335,000.00 as determined by Isbel Gonzalez of Accurate Appraising Services, Inc.

4. Lender, Indymac/OneWest Bank, FSB holds a lien on the real property, securing a claim in the aggregate amount of $412,281.32.

5. Lender's collateral solely consists of the debtor's principal residence. As there is no equity in the real property after payment in full of the claims secured by liens senior to that of Lender, the value of Lender's secured interest in the real property is $0.00.

The undersigned reviewed the docket and claims register and states:

6. Lender filed a proof of claim in this case, (Claim#1). It shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim.

7. The subject real property may not be sold or refinanced without proper notice and further order of the court.

**WHEREFORE,** the debtor respectfully requests an order of the Court (a) determining the value of the real property in the amount asserted in this Motion, (b) determining the secured status of the Lender's lien as stated above, (c) determining that any timely filed proof of claim is classified as stated above, (d) if Lender's secured interest in the real property is determined to be $0.00, deeming Lender's mortgage on the real property void and extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 13 case, and (e) providing such other and further relief as is just.

**NOTICE IS HEREBY GIVEN THAT:**

1. In accordance with the rules of this Court, unless an objection is filed with the Court and served upon the debtor, the debtor's attorney, and the trustee at least two (2) business days prior to the hearing scheduled on this Motion, the value of the collateral may be established at the amount stated above without further notice, hearing or order of the

LF-77 (rev. 04/29/11)

Court. Pursuant to Local Rule 3015-3, timely raised objections will be heard at the hearing scheduled on the Motion.

2. The undersigned acknowledges that this Motion and the notice of hearing thereon must be served pursuant to Bankruptcy Rule 7004 and Local Rule 3015-3 at least 21 days prior to the hearing date and that a certificate of service must be filed when the Motion and notice of hearing thereon are served.

Respectfully Submitted:
**Law Offices of Patrick L. Cordero, Esq.**
Attorney for Debtor
198 NW 37th Avenue
Miami, Fl 33125
Tel: (305) 445-4855
/s/ FILED ECF
PATRICK L. CORDERO, ESQ.
Fl Bar No: 801992

LF-77 (rev. 04/29/11)

Loan No: 124990274

This document was prepared by THERESA MORRIS
190 TECHNOLOGY PWY, SUITE 100, NORCROSS, GA 30092

State of Florida's Documentary Stamp Tax required by law in the amount of $ .................... has been paid to the Clerk of the Circuit Court (or the County Comptroller, if applicable) for the County of ........ MIAMI-DADE ........
....................................., State of Florida.

```
CFN  2007R0005039
OR Bk 25243 Pgs 3622 - 3625; (4pgs)
RECORDED 01/02/2007 16:54:15
MTG DOC TAX 267.75
INTANG TAX 153.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

———— State of Florida ————                        ———— Space Above This Line For Recording Data ————

## MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ....December 19, 2006.......... and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR: NICHOLAS A JIMENEZ

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

   LENDER: INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

   155 NORTH LAKE AVENUE, PASADENA, CA 91101

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

   LOT 24, IN BLOCK 2, OF GENESIS OAK GARDENS, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 155, AT PAGE 56 OF THE PUBLIC RECORDS OF MIAMI-DADE COUTNY, FLORDIA.

   The property is located in ................MIAMI-DADE...................... at 9055 NW 168 TER ...............
   (County)                                                                              (Address)
   ..................................., .............HIALEAH................., Florida ......33018........
                                           (City)                                          (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. The initial indebtedness secured by this Security Instrument is the debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and include the final maturity of such debt(s).)*
   One certain home equity line of credit agreement dated December 19, 2006 executed by NICOLAS A JIMENEZ in the amount of $76,500.00 due and payable in full on January 15, 2027.

   B. All future advances made within 20 years of the date of this Security Instrument from Lender to Mortgagor or other future obligations of Mortgagor to Lender pursuant to section 4 of the Security Instrument under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others,

FLORIDA - HOME EQUITY LINE OF CREDIT MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                    *(page 1 of 4)*
Expers © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-FL 4/19/2002
C485(FL) (0206)                              VMP MORTGAGE FORMS - (800)521-7291

*NJ*

Loan No: 124990274

All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness incurred under paragraph B of this Section, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the loan referenced in Paragraph A of this Section).

4. **MAXIMUM OBLIGATION LIMIT; FUTURE ADVANCES.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 76,500.00......................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or

Exper!® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-FL 4/19/2002 *(page 2 of 4)*
-C465(FL) (0206)

Loan No: 124990274

postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Mortgagor will be in default if any of the following occur:
   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.
   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.
   **Property.** Any action or inaction occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.
   **Executive Officers.** Mortgagor is an executive officer of Lender or an affiliate and Mortgagor becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.
   At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

   Mortgagor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

Experity © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-FL 4/19/2002
-C465(FL) (0208)

(page 3 of 4)

Loan No: 124990274

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

17. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

18. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

19. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

    [Check all applicable boxes]
    ☐ Assignment of Leases and Rents  ☐ Other ........................................................

20. ☐ Payment of this note or mortgage is subject to the terms of a home improvement installment contract of even date between maker and payee or mortgagor and mortgagee.

21. ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*(Signature)* NICOLAS A JIMENEZ   12/19/06 *(Date)*   ........................................ *(Signature)* ........ *(Date)*

*(Witness)* Marilyn French — MARILYN FRANK      *(Witness)* TORNES MOCK

**ACKNOWLEDGMENT:**
*(Individual)* STATE OF FLORIDA, COUNTY OF PALM BEACH }ss.
This instrument was acknowledged before me this 19th day of December, 2006
by NICOLAS A. JIMENEZ
who is personally known to me or who has produced DRIVER LICENSE as identification.
My commission expires:
(Seal)

*(Notary Public)*

TORNES B. MOCK
MY COMMISSION # DD 509609
EXPIRES: January 23, 2010
Bonded Thru Notary Public Underwriters

Experé © 1994 Bankers Systems MTG-FL 4/19/2002

C465(FL) (0206)

*(page 4 of 4)*

Accurate Appraising Services, Inc. (786)287-8665

File # EM-08-Jimenez

# Cover Page



## LOCATED AT
9055 NW 168th Terrace
Miami Lakes, FL 33018
Genesis Oak Gardens Pb 155-56 T-19383 Lot 24 Blk 2

## FOR
Jimenez, Nicolas A

## OPINION OF VALUE
335,000

## AS OF
08/30/2013

## TABLE OF CONTENTS

Summary of Salient Features ................................................................................................................... 1
USPAP Identification ............................................................................................................................... 2
GP Residential ......................................................................................................................................... 3
Building Sketch (Page - 1) ...................................................................................................................... 6
Location Map ........................................................................................................................................... 7
Subject Photos ........................................................................................................................................ 8
Subject Photos Interior ........................................................................................................................... 9
Comparable Photos 1-3 ......................................................................................................................... 10
Addendum ............................................................................................................................................. 11

Form TCGLV_LT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## SUMMARY OF SALIENT FEATURES

### SUBJECT INFORMATION

| | |
|---|---|
| Subject Address | 9055 NW 168th Terrace |
| Legal Description | Genesis Oak Gardens Pb 155-56 T-19383 Lot 24 Blk 2 |
| City | Miami Lakes |
| County | Miami Dade |
| State | FL |
| Zip Code | 33018 |
| Census Tract | 0132.00 |
| Map Reference | 52 40 16 |

### SALES PRICE

| | |
|---|---|
| Sale Price | $ N/A |
| Date of Sale | N/A |

### CLIENT

| | |
|---|---|
| Borrower/Client | N/A |
| Lender | N/A |

### DESCRIPTION OF IMPROVEMENTS

| | |
|---|---|
| Size (Square Feet) | 2,467 |
| Price per Square Foot | $ N/A |
| Location | Suburban/Avg |
| Age | 11 Years |
| Condition | Average |
| Total Rooms | 7 |
| Bedrooms | 4 |
| Baths | 3 |

### APPRAISER

| | |
|---|---|
| Appraiser | Isbel Gonzalez St. Cert. Res. REA RD 4911 |
| Date of Appraised Value | 08/30/2013 |

### VALUE

| | |
|---|---|
| Opinion of Value | $ 160,000 |

| FROM: | | INVOICE | |
|---|---|---|---|
| Isbel Gonzalez | | | |
| Accurate Appraising Services, Inc. | | **INVOICE NUMBER** | |
| 19651 SW 132nd Place | | EM-08-Jimenez | |
| Miami, FL 33177 | | **DATE** | |
| | | 08/30/2013 | |
| Telephone Number: 786-287-8665    Fax Number: 1-888-812-8288 | | | |

**REFERENCE**

| Internal Order #: | EM-08-Jimenez |
|---|---|
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | EM-08-Jimenez |
| Other File # on form: | EM-08-Jimenez |
| Federal Tax ID: | |
| Employer ID: | |

TO:
Jimenez, Nicolas A

Telephone Number:    Fax Number:
Alternate Number:    E-Mail:

## DESCRIPTION

Lender: N/A                                              Client: Jimenez, Nicolas A
Purchaser/Borrower: N/A
Property Address: 9055 NW 168th Terrace
City: Miami Lakes
County: Miami Dade                    State: FL                    Zip: 33018
Legal Description: Genesis Oak Gardens Pb 155-56 T-19383 Lot 24 Blk 2

## FEES                                                                                                AMOUNT

| Full Appraisal | 200.00 |
|---|---|
| | |
| **SUBTOTAL** | **200.00** |

## PAYMENTS                                                                                          AMOUNT

| Check #: | Date: | Description: | 200.00 |
|---|---|---|---|
| Check #: | Date: | Description: | |
| Check #: | Date: | Description: | |
| | | **SUBTOTAL** | **200.00** |
| | | **TOTAL DUE** | **$  0** |

Accurate Appraising Services, Inc. (786)287-8665    Main File No. EM-08-Jimenez Page #2

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 9055 NW 168th Terrace |
| City | Miami Lakes |
| County | Miami Dade |
| State | FL |
| Zip Code | 33018 |
| Lender | N/A |
| File No. | EM-08-Jimenez |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is **one** of the following types:

☐ **Self Contained**  (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Summary**  (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Restricted Use**  (A written report prepared under Standards Rule 2-2(c), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— the statements of fact contained in this report are true and correct.
— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
— my engagement in this assignment was not contingent upon developing or reporting predetermined results.
— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)
— no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

## Comments on Appraisal and Report Identification

Note any USPAP related issues requiring disclosure and any state mandated requirements:

The appraisal intended user is the subject property owner requesting this appraisal and the intended use is to establish a subject opinion of value for a private purpose. This appraisal is not intended to be used for insurance or financing purposes.

**APPRAISER:**

Signature: _(signed)_
Name: Isbel Gonzalez St. Cert. Res. REA RD 4911
Date Signed: 08/30/2013
State Certification #: RD 4911
or State License #:
State: FL
Expiration Date of Certification or License: 11/30/2014

Effective Date of Appraisal: 08/30/2013

**SUPERVISORY APPRAISER (only if required):**

Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not    ☐ Exterior-only from street    ☐ Interior and Exterior

Form ID06 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Accurate Appraising Services, Inc. (786)287-8665

Main File No. EM-08-Jimenez Page #3

# APPRAISAL REPORT

EM-08-Jimenez
File No.: EM-08-Jimenez

## SUBJECT

| | |
|---|---|
| Property Address: 9055 NW 168th Terrace | City: Miami Lakes   State: FL   Zip Code: 33018 |
| County: Miami Dade | Legal Description: Genesis Oak Gardens Pb 155-56 T-19383 Lot 24 Blk 2 |
| | Assessor's Parcel #: 32-2016-003-0780 |
| Tax Year: 2012   R.E. Taxes: $ 4,361   Special Assessments: $ N/A | Borrower (if applicable): N/A |
| Current Owner of Record: Jimenez, Nicolas A | Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing |
| Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe) | HOA: $   ☐ per year ☐ per month |
| Market Area Name: Miami Lakes | Map Reference: 52 40 16   Census Tract: 0132.00 |

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date)  ☐ Retrospective  ☐ Prospective
Approaches developed for this appraisal: ☒ Sales Comparison Approach  ☐ Cost Approach  ☐ Income Approach  (See Reconciliation Comments and Scope of Work)
Property Rights Appraised: ☒ Fee Simple  ☐ Leasehold  ☐ Leased Fee  ☐ Other (describe)
Intended Use: Establish a current opinion of value for subject property as per effective date of the appraisal.

Intended User(s) (by name or type): Jimenez, Nicolas A
Client: Jimenez, Nicolas A   Address:
Appraiser: Isbel Gonzalez St. Cert. Res. REA RD 4911   Address: 19651 SW 132nd Place, Miami, FL 33177

## MARKET AREA DESCRIPTION

| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | | Change in Land Use |
|---|---|---|---|---|---|---|---|
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE | AGE | One-Unit | 33.64% | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | $(000) | (yrs) | 2-4 Unit | % | ☐ Likely * ☐ In Process * |
| Property values: | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant | 223 Low | 10 | Multi-Unit | 61.14% | * To: |
| Demand/supply: | ☐ Shortage ☒ In Balance ☐ Over Supply | ☒ Vacant (0-5%) | 355 High | 13 | Comm'l | 3.79% | |
| Marketing time: | ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | 260 Pred | 12 | Other | 1.43% | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): The subject's market area is bound by Miami Gardens Drive to the North, I-75 to the West, Ludlam Road to the East, and I-75 to the South. The predominant dwellings are multi family homes that started developing 13 years ago. Some commercial properties can be found along the major traffic arteries and over 75% of the area is built up with a stable growth rate. The predominant occupancy is by owners and no change in land use is announced or indicated. The current marketing time is 3-6 six months and property values are stable. Current active and recent closed sales indicate supply and demand balanced. Public parks, schools and shopping facilities are within the market area and can be easily accessed through the major traffic roads.

## SITE DESCRIPTION

Dimensions:   Site Area: 12,310 Sq.Ft.
Zoning Classification: Ru-1   Description: Single Family 2101 to 2300
Zoning Compliance: ☒ Legal  ☐ Legal nonconforming (grandfathered)  ☐ Illegal  ☐ No zoning
Are CC&Rs applicable? ☐ Yes ☐ No ☒ Unknown   Have the documents been reviewed? ☐ Yes ☒ No   Ground Rent (if applicable) $ /
Highest & Best Use as Improved: ☒ Present use, or ☐ Other use (explain)

Actual Use as of Effective Date: Single Family   Use as appraised in this report: Single Family
Summary of Highest & Best Use: The highest and best use for this area is single family homes.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Appears level to street |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☐ | ☒ | FPL | Street | Asphalt | ☒ | ☐ | Size | Average |
| Gas | ☐ | ☐ | | Curb/Gutter | Yes/Yes | ☒ | ☐ | Shape | Mostly Rectangular |
| Water | ☒ | ☐ | Municipal | Sidewalk | Yes | ☒ | ☐ | Drainage | Appears Adequate |
| Sanitary Sewer | ☒ | ☐ | Municipal | Street Lights | No | ☐ | ☐ | View | Residential |
| Storm Sewer | ☒ | ☐ | Municipal | Alley | None Noted | ☐ | ☐ | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)
FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 12086C0113L   FEMA Map Date 09/11/2009
Site Comments: N/A

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | Yes |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1 ☐ Acc.Unit | Foundation | Concrete/Avg. | Slab | Yes | Area Sq. Ft. | | Type | Central |
| # of Stories | 2 | Exterior Walls | CBS/Average. | Crawl Space | N/A | % Finished | | Fuel | Elect |
| Type ☒ Det. ☐ Att. ☐ | | Roof Surface | B.Tile/Average | Basement | N/A | Ceiling | | | |
| Design (Style) 2 Story | | Gutters & Dwnspts. | N/A | Sump Pump | ☐ | Walls | | Cooling | Yes |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Single Hung | Dampness | ☐ | Floor | | Central | Yes |
| Actual Age (Yrs.) 11 | | Storm/Screens | N/A | Settlement | N/A | Outside Entry | | Other | No |
| Effective Age (Yrs.) 03 | | | | Infestation | N/A | | | | |

| Interior Description | | Appliances | | Attic | ☐ None | Amenities | | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Tile/Carpet/Avg | Refrigerator | ☒ | Stairs | ☐ | Fireplace(s) # | | Woodstove(s) # | Garage # of cars ( 6 Tot.) | |
| Walls | Drywall/Average | Range/Oven | ☒ | Drop Stair | ☐ | Patio | Open | | Attach. 2 | |
| Trim/Finish | Wood/Average | Disposal | ☒ | Scuttle | ☐ | Deck | | | Detach. | |
| Bath Floor | Tile/Average | Dishwasher | ☒ | Doorway | ☐ | Porch | | | Blt.-In | |
| Bath Wainscot | Tile/Average | Fan/Hood | ☒ | Floor | ☐ | Fence | Wood | | Carport | |
| Doors | Wood/Average | Microwave | ☒ | Heated | ☐ | Pool | | | Driveway 4 | |
| | | Washer/Dryer | ☒ | Finished | ☐ | | | | Surface Concrete | |

Finished area above grade contains: 7 Rooms   4 Bedrooms   3 Bath(s)   2,467 Square Feet of Gross Living Area Above Grade
Additional features: No additional features were included in this appraisal.

Describe the condition of the property (including physical, functional and external obsolescence): The subject property is in average condition with no indication of major deterioration or repairs needed.

## GP RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE
3/2007

# APPRAISAL REPORT

EM-08-Jimenez
File No.: EM-08-Jimenez

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s): MLX/Public Records

**TRANSFER HISTORY**

| | |
|---|---|
| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: N/A. |
| Date: | |
| Price: | |
| Source(s): | |
| 2nd Prior Subject Sale/Transfer | |
| Date: | |
| Price: | |
| Source(s): | |

**SALES COMPARISON APPROACH TO VALUE (if developed)** ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 9055 NW 168th Terrace | 8981 NW 178th Street | | 15625 NW 82nd Court | | 9137 NW 169th Street | |
| | Miami Lakes, FL 33018 | Miami Lakes, FL 33018 | | Miami Lakes, FL 33018 | | Miami Lakes, FL 33018 | |
| Proximity to Subject | | 0.62 miles N | | 1.21 miles SE | | 0.07 miles NW | |
| Sale Price | $ N/A | $ 312,000 | | $ 365,000 | | $ 354,700 | |
| Sale Price/GLA | $ N/A /sq.ft. | $ 103.41 /sq.ft. | | $ 117.06 /sq.ft. | | $ 145.25 /sq.ft. | |
| Data Source(s) | MLX/P.Record | MLX/P.Records | | MLX/P.Records | | MLX/P.Records | |
| Verification Source(s) | Inspection | Observation | | Observation | | Observation | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Cash | | Conventional | | Cash | |
| Concessions | None Known | None Known | | Seller Contribution | -1,900 | None Known | |
| Date of Sale/Time | N/A | 04/12/2013 | | 05/20/2013 | | 11/08/2012 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban/Avg | Suburban/Avg | | Suburban/Avg | | Suburban/Avg | |
| Site | 12,310 Sq.Ft. | 5,500 Sq.Ft. | +40,000 | 11,532 Sq.Ft. | | 12,950 Sq.Ft. | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | 2 Story | 2 Story | | 1 Story | | 2 Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 11 Years | 08 Years | | 23 Years | | 10 Years | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 7  4  3 | 8  5  4.5 | -4,500 | 6  3  2.5 | +1,500 | 7  4  3 | |
| Gross Living Area | 2,467 sq.ft. | 3,017 sq.ft. | -16,500 | 3,118 sq.ft. | -19,530 | 2,442 sq.ft. | 0 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central H & AC | Central H & AC | | Central H & AC | | Central H & AC | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Open Patio | Open Patio | | Open Patio | | Open Patio | |
| Pool | None | None | | Inground | -12,000 | Inground | -12,000 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ - | $ 19,000 | ☐ +  ☒ - | $ -31,930 | ☐ +  ☒ - | $ -12,000 |
| Adjusted Sale Price of Comparables | | | $ 331,000 | | $ 333,070 | | $ 342,700 |

Summary of Sales Comparison Approach  All comparables provided are good indicators of value for subject's sales comparison approach. All three comparables are located within subject area and share same market amenities and conditions.

Indicated Value by Sales Comparison Approach $ 336,000

**GP RESIDENTIAL**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE
3/2007

# APPRAISAL REPORT

**COST APPROACH TO VALUE (if developed)**  ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): _____

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ............................................. =$_____
Source of cost data: _____ | DWELLING        Sq.Ft. @ $ _____  =$ _____
Quality rating from cost service: _____ Effective date of cost data: _____ |        Sq.Ft. @ $ _____  =$ _____
Comments on Cost Approach (gross living area calculations, depreciation, etc.): |        Sq.Ft. @ $ _____  =$ _____
_____ |        Sq.Ft. @ $ _____  =$ _____
_____ |        Sq.Ft. @ $ _____  =$ _____
_____ |                                  =$ _____
_____ | Garage/Carport   Sq.Ft. @ $ _____  =$ _____
_____ | Total Estimate of Cost-New       =$ _____
_____ | Less    Physical    Functional    External
_____ | Depreciation                     =$(    )
_____ | Depreciated Cost of Improvements =$ _____
_____ | "As-is" Value of Site Improvements =$ _____
_____ |                                  =$ _____
_____ |                                  =$ _____

Estimated Remaining Economic Life (if required): _____ Years | INDICATED VALUE BY COST APPROACH =$ _____

**INCOME APPROACH TO VALUE (if developed)**  ☒ The Income Approach was not developed for this appraisal.

Estimated Monthly Market Rent $ _____  X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM): _____

**PROJECT INFORMATION FOR PUDs (if applicable)**  ☐ The Subject is part of a Planned Unit Development.
Legal Name of Project: _____
Describe common elements and recreational facilities: _____

Indicated Value by: Sales Comparison Approach $ 335,000    Cost Approach (if developed) $ _____    Income Approach (if developed) $ _____
Final Reconciliation  The sales comparison approach is the most accurate and applicable way of developing subject estimation of value.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: _____

☐ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.
Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $ 335,000 , as of: 08/30/2013 , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

A true and complete copy of this report contains  13  pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:
☒ Scope of Work            ☒ Limiting Cond./Certifications   ☒ Narrative Addendum       ☒ Photograph Addenda    ☒ Sketch Addendum
☒ Map Addenda              ☐ Additional Sales                ☐ Additional Rentals        ☒ Flood Addendum        ☐ Hypothetical Conditions
☐ Extraordinary Assumptions ☐ Budget Analysis                ☐

Client Contact: _____            Client Name: Jimenez, Nicolas A
E-Mail: _____                    Address: _____

**APPRAISER**                                      **SUPERVISORY APPRAISER (if required)**
                                                   **or CO-APPRAISER (if applicable)**

Appraiser Name: Isbel Gonzalez St. Cert. Res. REA RD 4911    Supervisory or Co-Appraiser Name: _____
Company: Accurate Appraising Services, Inc.                  Company: _____
Phone: (786) 287-8665    Fax: (888) 812-8288                 Phone: _____   Fax: _____
E-Mail: appraisingservices@gmail.com                         E-Mail: _____
Date of Report (Signature): August 30, 2013                  Date of Report (Signature): _____
License or Certification #: RD 4911    State: FL             License or Certification #: _____   State: _____
Designation: State Certified R.E.A RD 4911                   Designation: _____
Expiration Date of License or Certification: 11/30/2014      Expiration Date of License or Certification: _____
Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None    Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None
Date of Inspection: 08/30/2013                               Date of Inspection: _____

**GP RESIDENTIAL**   Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE                3/2007

Main File No. EM-08-Jimenez Page #6

**Building Sketch**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 9055 NW 168th Terrace | | | | |
| City | Miami Lakes | County | Miami Dade | State FL | Zip Code 33018 |
| Lender | N/A | | | | |



Sketch by Apex IV™

Form SKT.BldSki — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. EM-08-Jimenez  Page #7

## Location Map

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 9055 NW 168th Terrace | | | | |
| City | Miami Lakes | County | Miami Dade | State FL | Zip Code 33018 |
| Lender | N/A | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Subject Photo Page**

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 9055 NW 168th Terrace | | | | |
| City | Miami Lakes | County | Miami Dade | State FL | Zip Code 33018 |
| Lender | N/A | | | | |



**Subject Front**

9055 NW 168th Terrace
Sales Price       N/A
Gross Living Area 2,467
Total Rooms       7
Total Bedrooms    4
Total Bathrooms   3
Location          Suburban/Avg
View              Residential
Site              12,310 Sq.Ft.
Quality           Average
Age               11 Years



**Subject Front**



**Subject Street**

Form PICPIX.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Interior Photo Page

| Borrower/Client | N/A | | | | |
|---|---|---|---|---|---|
| Property Address | 9055 NW 168th Terrace | | | | |
| City | Miami Lakes | County | Miami Dade | State FL | Zip Code 33018 |
| Lender | N/A | | | | |



**Subject Interior**

9055 NW 168th Terrace
Sales Price            N/A
Gross Living Area      2,467
Total Rooms            7
Total Bedrooms         4
Total Bathrooms        3
Location               Suburban/Avg
View                   Residential
Site                   12,310 Sq.Ft.
Quality                Average
Age                    11 Years



**Subject Interior**



**Subject Interior**

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 9055 NW 168th Terrace | | |
| City | Miami Lakes | County Miami Dade | State FL   Zip Code 33018 |
| Lender | N/A | | |



**Comparable 1**
8981 NW 178th Street
Prox. to Subject   0.62 miles N
Sales Price   312,000
Gross Living Area   3,017
Total Rooms   8
Total Bedrooms   5
Total Bathrooms   4.5
Location   Suburban/Avg
View   Residential
Site   5,500 Sq.Ft.
Quality   Average
Age   08 Years



**Comparable 2**
15625 NW 82nd Court
Prox. to Subject   1.21 miles SE
Sales Price   365,000
Gross Living Area   3,118
Total Rooms   6
Total Bedrooms   3
Total Bathrooms   2.5
Location   Suburban/Avg
View   Residential
Site   11,532 Sq.Ft.
Quality   Average
Age   23 Years



**Comparable 3**
9137 NW 169th Street
Prox. to Subject   0.07 miles NW
Sales Price   354,700
Gross Living Area   2,442
Total Rooms   7
Total Bedrooms   4
Total Bathrooms   3
Location   Suburban/Avg
View   Residential
Site   12,950 Sq.Ft.
Quality   Average
Age   10 Years

THIS DOCUMENT HAS A COLORED BACKGROUND • MICROPRINTING • LINEMARK™ PATENTED PAPER

AC#687896

**STATE OF FLORIDA**

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
FLORIDA REAL ESTATE APPRAISAL BD

SEQ# L12112901939

| DATE | BATCH NUMBER | LICENSE NBR |
|---|---|---|
| 11/29/2012 | 128154260 | RD4911 |

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2014

GONZALEZ, ISBEL
19651 SW 132ND PLACE
MIAMI              FL 33177

RICK SCOTT
GOVERNOR

DISPLAY AS REQUIRED BY LAW

KEN LAWSON
SECRETARY